**1622-CC09572**

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

## MISSOURI CIRCUIT COURT
## TWENTY-SECOND JUDICIAL CIRCUIT
## (CITY OF ST. LOUIS)

| | |
|---|---|
| KEVIN REDMOND, MYRTLE CARRAWAY, LISA TROMBETTA, MICHAEL BOANES, PAUL BRUCKNER, CAROL CRUZ, RICHARD HENRY ON BEHALF OF JOHN HENRY, DECEASED, TINA HODGE, DEANNA BERKEBILE ON BEHALF OF FRANCES KADILLAC, DECEASED, JOHN KASPER, JACK MOWEN, BETTY PITMAN, DIANNE SCHAEFER, JEFF SCOTT, MARY TIMMINS-KULL, JACQUELYN WARD ON BEHALF OF JIMMIE E. WARD, DECEASED, LYNNE WARRYTON ON BEHALF OF LEROY WARRYTON, DECEASED and JEWEL WHITE | Cause No. |
| | Div. No. |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| JANSSEN RESEARCH & DEVELOPMENT, LLC, f/k/a JOHNSON AND JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT, LLC; JANSSEN ORTHO, LLC; JANSSEN PHARMACEUTICALS, INC., f/k/a JANSSEN PHARMACEUTICA, INC., f/k/a ORTHO-MCNEIL-JANSSEN PHARM-ACEUTICALS, INC.; JOHNSON & JOHNSON COMPANY; BAYER HEALTHCARE PHARMACEUTICALS, INC.; BAYER PHARMA AG; BAYER CORPORATION; BAYER HEALTHCARE, LLC; BAYER HEALTHCARE AG, and BAYER AG, | |
| Defendants. | |

1

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

**PETITION**

COME NOW Plaintiffs, by and through their undersigned attorneys, and for their Petition against Defendants, JANSSEN RESEARCH & DEVELOPMENT, LLC, f/k/a JOHNSON AND JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT, LLC; JANSSEN ORTHO, LLC; JANSSEN PHARMACEUTICALS, INC., f/k/a JANSSEN PHARMACEUTICA, INC., f/k/a ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.; BAYER HEALTHCARE PHARMACEUTICALS, INC.; BAYER PHARMA AG; BAYER CORPORATION; BAYER HEALTHCARE, LLC; BAYER HEALTHCARE AG, and BAYER AG ("Defendants"), state and allege the following upon information and belief:

1.      This action is brought by Plaintiffs seeking damages for personal injuries and economic damages suffered as a result of a defective and dangerous pharmaceutical product, Xarelto (rivaroxaban), which was designed, researched, developed, manufactured, tested, labeled, advertised, marketed, promoted, distributed and sold by Defendants and Defendants' representatives.

**PARTIES**

1.      Plaintiff Kevin Redmond is a citizen and resident of Missouri.  Plaintiff was prescribed Xarelto in the City of St. Louis, Missouri, and first suffered and was treated for Xarelto-related injuries in the City of St. Louis, Missouri. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Plaintiff maintains, inter alia, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

2.      Plaintiff Myrtle Carraway is a citizen and resident of Missouri.  Plaintiff first suffered and was treated for Xarelto-related injuries in the City of St. Louis, Missouri. Plaintiff

2

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

suffered damages as a direct result of ingestion of Xarelto as more particularly described below. Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

3.     Plaintiff Lisa Trombetta is a citizen and resident of Pennsylvania.  Plaintiff first suffered and was treated for Xarelto-related injuries in Pennsylvania. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

4.     Plaintiff Michael Boanes is a citizen and resident of Pennsylvania.  Plaintiff first suffered and was treated for Xarelto-related injuries in Pennsylvania. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

5.     Plaintiff Paul Bruckner is a citizen and resident of California.  Plaintiff first suffered and was treated for Xarelto-related injuries in California. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

6.     Plaintiff Carol Cruz is a citizen and resident of Pennsylvania.  Plaintiff first suffered and was treated for Xarelto-related injuries in Pennsylvania. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

7.     Plaintiff John Henry, deceased, was a citizen and resident of the State of Pennsylvania, and was treated for Xarelto-related injuries in the State of Pennsylvania. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below. Said Plaintiff ultimately died due to Plaintiff's injuries on or about November 28, 2014. Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use. Said Plaintiff's representative, Richard Henry, proceeds individually and on behalf of said Plaintiff.

8.     Plaintiff Tina Hodge is a citizen and resident of California.  Plaintiff first suffered and was treated for Xarelto-related injuries in California. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

9.     Plaintiff Frances Kadillac, deceased, was a citizen and resident of the State of Pennsylvania, and was treated for Xarelto-related injuries in the State of Pennsylvania. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below. Said Plaintiff ultimately died due to Plaintiff's injuries on or about July 30, 2013. Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use. Said Plaintiff's representative, Deanna Berkebile, proceeds individually and on behalf of said Plaintiff.

10.     Plaintiff John Kasper is a citizen and resident of New Jersey.  Plaintiff first suffered and was treated for Xarelto-related injuries in New Jersey. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

11.     Plaintiff Jack Mowen is a citizen and resident of Pennsylvania.  Plaintiff first suffered and was treated for Xarelto-related injuries in Pennsylvania. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

12.     Plaintiff Betty Pitman is a citizen and resident of California.  Plaintiff first suffered and was treated for Xarelto-related injuries in California. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

13.     Plaintiff Dianne Schaefer is a citizen and resident of Texas.  Plaintiff first suffered and was treated for Xarelto-related injuries in Texas. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

14.     Plaintiff Jeff Scott is a citizen and resident of California.  Plaintiff first suffered and was treated for Xarelto-related injuries in California. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

15.     Plaintiff Mary Timmins-Kull is a citizen and resident of New Jersey.  Plaintiff first suffered and was treated for Xarelto-related injuries in New Jersey. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Plaintiff maintains,

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

*inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

16.    Plaintiff Jimmie E. Ward, deceased, was a citizen and resident of the State of California, and was treated for Xarelto-related injuries in the State of California. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Said Plaintiff ultimately died due to Plaintiff's injuries on or about December 7, 2013. Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use. Said Plaintiff's representative, Jacquelyn Ward, proceeds individually and on behalf of said Plaintiff.

17.    Plaintiff Leroy Warryton, deceased, was a citizen and resident of the State of Pennsylvania, and was treated for Xarelto-related injuries in the State of Pennsylvania. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below. Said Plaintiff ultimately died due to Plaintiff's injuries on or about August 13, 2014. Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use. Said Plaintiff's representative, Lynne Warryton, proceeds individually and on behalf of said Plaintiff.

18.    Plaintiff Jewel White is a citizen and resident of Oklahoma.  Plaintiff first suffered and was treated for Xarelto-related injuries in Oklahoma. Plaintiff suffered damages as a direct result of ingestion of Xarelto as more particularly described below.  Plaintiff maintains, *inter alia*, that Xarelto is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use.

19.    Defendant JANSSEN RESEARCH & DEVELOPMENT, LLC, f/k/a JOHNSON AND JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT, LLC, is a limited liability company organized under the laws of New Jersey with its principal place of business in

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

New Brunswick, New Jersey.  Defendant's sole member is JANSSEN PHARMACEUTICALS, INC., f/k/a JANSSEN PHARMACEUTICA, INC., f/k/a ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.  Defendant is the holder of the approved New Drug Application ("NDA") and supplemental NDA for Xarelto and is in the business of designing, researching, developing, manufacturing, testing, labeling, advertising, marketing, promoting, distributing and selling pharmaceuticals, including Xarelto, for use by the mainstream public throughout the United States and the State of Missouri, including St. Louis, Missouri.  Service of process upon defendant may be accomplished by serving its agent for service of process at One Johnson & Johnson Plaza, New Brunswick, NJ  08933.

20.    Defendant Johnson & Johnson (hereinafter referred to as "J&J") is a fictitious name adopted by Defendant Johnson & Johnson Company, a New Jersey corporation which has its principal place of business at One Johnson &  Johnson Plaza, New Brunswick, Middlesex County, New Jersey 08933.

21.    As part of its business, J&J, and its "family of companies," is involved in the research, development, sales, and marketing of pharmaceutical products, including Xarelto.

22.    Defendant JANSSEN ORTHO, LLC, is a limited liability company organized under the laws of Delaware with its principal place of business in Puerto Rico.  Defendant is a subsidiary of Johnson & Johnson.  Its sole member is OMJ PR Holdings, which is organized under the laws of Ireland and has its principal place of business in Puerto Rico.  Defendant is in the business of designing, researching, developing, manufacturing, testing, labeling, advertising, marketing, promoting, distributing and selling pharmaceuticals, including Xarelto, for use by the mainstream public throughout the United States and the State of Missouri, including St. Louis City, Missouri.  Service of process upon defendant may be accomplished by serving its agent for

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

service of process, Janssen Ortho, LLC, Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801.

23.    Defendant  JANSSEN  PHARMACEUTICALS,  INC.,  f/k/a  JANSSEN PHARMACEUTICA, INC., f/k/a ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., is a corporation organized under the laws of Pennsylvania with its principal place of business in Titusville, New Jersey.  Defendant is in the business of designing, researching, developing, manufacturing, testing, labeling, advertising, marketing, promoting, distributing and selling pharmaceuticals, including Xarelto, for use by the mainstream public throughout the United States and the State of Missouri, including St. Louis City, Missouri.  Service of process upon defendant may be accomplished by serving its agent for service of process, C T CORPORATION SYSTEM, 120 South Central Avenue, Clayton, MO 63105

24.    Defendant  BAYER  HEALTHCARE  PHARMACEUTICALS,  INC.,  is  a corporation organized under the laws of Delaware with its principal place of business in Montville, New Jersey.  Defendant, formerly known as Berlex Laboratories, Inc., and Berlex, Inc., is a U.S. subsidiary of BAYER HEALTHCARE, LLC, and is in the business of designing, researching, developing, manufacturing, testing, labeling, advertising, marketing, promoting, distributing and selling pharmaceuticals, including Xarelto, for use by the mainstream public throughout the United States and the State of Missouri, including St. Louis City, Missouri.  Service of process upon defendant may be accomplished by serving its agent for service of process, CSC-Lawyers Incorporating Service Company, 221 Bolivar Jefferson City, MO 65101.

25.    Defendant BAYER PHARMA AG, formerly known as Bayer Schering Pharma AG and Schering AG, is a pharmaceutical company domiciled in Germany with its principal place of business in Leverkusen, Germany.  Defendant is in the business of designing, researching, developing, manufacturing, testing, labeling, advertising, marketing, promoting, distributing and

8

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

selling pharmaceuticals, including Xarelto, for use by the mainstream public throughout the United States and the State of Missouri, including St. Louis City, Missouri. Service of process upon defendant may be accomplished by serving its agent for service of process, at Mullerstrasse 178, D-13353 Berlin, Germany.

26.     Defendant BAYER CORPORATION is a corporation organized under the laws of Indiana with its principal place of business in Pittsburgh, Pennsylvania. Defendant is the sole member of BAYER HEALTHCARE, LLC, and a parent of BAYER HEALTHCARE PHARMACEUTICALS, INC. Defendant is in the business of designing, researching, developing, manufacturing, testing, labeling, advertising, marketing, promoting, distributing and selling pharmaceuticals, including Xarelto, for use by the mainstream public throughout the United States and the State of Missouri, including St. Louis, Missouri. Service of process upon defendant may be accomplished by serving its agent for service of process, Secretary of State, 600 West Main, Jefferson City, MO 65102.

27.     Defendant BAYER HEALTHCARE, LLC, is a limited liability company organized under the laws of Delaware with its principal place of business in Whippany, New Jersey. Defendant is in the business of designing, researching, developing, manufacturing, testing, labeling, advertising, marketing, promoting, distributing and selling pharmaceuticals, including Xarelto, for use by the mainstream public throughout the United States and the State of Missouri, including the city of St. Louis, Missouri. Service of process upon defendant may be accomplished by serving its agent for service of process, CSC-Lawyers Incorporating Service Company, 221 Bolivar Jefferson City, MO 65101.

28.     Defendant BAYER HEALTHCARE AG is a company domiciled in Germany with its principal place of business in Leverkusen, Germany. It is the parent company of BAYER CORPORATION,     BAYER     HEALTHCARE,     LLC,     BAYER     HEALTHCARE

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

PHARMACEUTICALS, INC., and BAYER PHARMA AG. Defendant is in the business of designing, researching, developing, manufacturing, testing, labeling, advertising, marketing, promoting, distributing and selling pharmaceuticals, including Xarelto, for use by the mainstream public throughout the United States and the State of Missouri, including St. Louis, Missouri. Service of process upon defendant may be accomplished by serving its agent for service of process at CHEMPARK Leverkusen, Zentraler Besucherempfang, Kaiser-Wilhelm-Allee, D-51368 Leverkusen, Germany.

29.    Defendant BAYER AG is a chemical and pharmaceutical company domiciled in Germany with its principal place of business in Leverkusen, Germany.  It is the third largest pharmaceutical company in the world and the parent company of all other Bayer defendants. Defendant is in the business of designing, researching, developing, manufacturing, testing, labeling, advertising, marketing, promoting, distributing and selling pharmaceuticals, including Xarelto, for use by the mainstream public throughout the United States and the State of Missouri, including St. Louis, Missouri.  Service of process upon defendant may be accomplished by serving its agent for service of process at Leverkusen, North Rhine-Westphalia, Germany.

## JURISDICTION AND VENUE

30.    Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over the defendants, because Defendants are present in the State of Missouri, such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

31.    This court has personal jurisdiction over the Defendants pursuant to and consistent with Missouri's long arm statute (R.S.Mo. §506.500) and the Constitutional requirements of Due Process in that the Defendants, acting through their agents or apparent agents, committed one or more of the following:

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

a. The transaction of any business within the state;

b. The making of any contract within the state;

c. The commission of a tortious act within this state; and/or

d. The ownership, use, or possession of any real estate situated within this state.

32.    Requiring Defendants to litigate these claims in Missouri does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

33.    Further, at all relevant times, Defendants were engaged in the business of designing, testing, manufacturing, packaging, marketing, advertising, distributing, promoting, and/or selling Xarelto in and throughout the State of Missouri, including the City of St. Louis. On information and belief, Defendants avail themselves of numerous nationwide advertising and promotional materials regarding Xarelto specifically intended to reach Plaintiffs, their doctors and other consumers in all states, specifically including Missouri. Those false statements include advertisements on local Missouri television programs, advertisements on local Missouri radio broadcasts, and advertisements in print publications delivered to consumers and their doctors in the State of Missouri.

34.    The Plaintiffs' claims arise out of Defendants' design, marketing and sale of Xarelto in the State of Missouri.

35.    These Defendants regularly conduct or solicit business and derive substantial revenue from goods used or consumed in, inter alia, the State of Missouri.

36.    Additionally, certain Plaintiffs suffered injury from the Defendants' products in Missouri, City of St. Louis.  Accordingly, venue is proper under R.S.Mo. §508.010.

37.    Plaintiffs each individually seek relief that is within the jurisdictional limits of the Court in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00)

**JOINDER OF PLAINTIFFS**

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

38.     Joinder of Plaintiffs in this Petition is proper pursuant to R.S.Mo. §507.040 (1) because Plaintiffs' right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences and involves common questions of law and fact.

## FACTUAL BACKROUND

39.     Defendants designed, researched, developed, manufactured, tested, labeled, advertised, marketed, promoted, distributed and sold Xarelto as a safe and effective treatment to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

40.     After obtaining initial FDA approval, Defendants launched Xarelto in the United States in 2011.

41.     Xarelto is an anticoagulant that acts as a Factor Xa inhibitor, and is available by prescription in oral tablet doses of 20mg, 15mg, and 10mg.

42.     Approval of Xarelto for the prophylaxis of DVT and PE in patients undergoing hip replacement or knee replacement surgeries was based on a series of clinical trials known as the Regulation of Coagulation in Orthopedic Surgery to Prevent Deep Venous Thrombosis and Pulmonary Embolism studies (hereinafter referred to as the "RECORD" studies). The findings of the RECORD studies showed that rivaroxaban was superior to enoxaparin for thromboprophylaxis after total knee and hip arthroplasty (based on the Defendants' definition), accompanied by similar rates of bleeding. However, the studies also showed a greater incidence with Xarelto of bleeding leading to decreased hemoglobin levels and transfusion of blood. (Lassen, M.R., et al. *Rivaroxaban versus Enoxaparin for Thromboprophylaxis after Total Knee Arthroplasty.* N.Engl.J.Med. 2008;358:2776-86; Kakkar, A.K., et al. *Extended duration rivaroxaban versus short-term*

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

*enoxaparin for the prevention of venous thromboembolism after total hip arthroplasty: a double-blind, randomised controlled trial.* Lancet 2008;372:31-39; Ericksson, B.I., et al. *Rivaroxaban versus Enoxaparin for Thromboprophylaxis after Hip Arthroplasty.* N.Engl.J.Med. 2008;358:2765-75.)

43.    Approval of Xarelto for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation in the U.S. was based on a clinical trial known as the Rivaroxaban Once Daily Oral Direct Factor Xa Inhibition Compared with Vitamin K Antagonism for Prevention of Stroke and Embolism Trial in Atrial Fibrillation study (hereinafter referred to as "ROCKET AF").  The study's findings showed that rivaroxaban was noninferior to warfarin for the prevention of stroke or systemic embolism in patients with non-valvular atrial fibrillation, with a similar risk of major bleeding.  However, "bleeding from gastrointestinal sites, including upper, lower, and rectal sites, occurred more frequently in the rivaroxaban group, as did bleeding that led to a drop in the hemoglobin level or bleeding that required transfusion." (Patel, M.R., et al. *Rivaroxaban versus Warfarin in Nonvalvular Atrial Fibrillation.* N.Engl.J.Med. 2011;365:883-91.)

44.    Approval of Xarelto for the treatment of DVT and/or PE and the reduction in recurrence of DVT and/or PE in the U.S. was based on the clinical trials known as the EINSTEIN-DVT, EINSTEIN-PE, and EINSTEIN-Extension studies.  The EINSTEIN-DVT study tested Xarelto versus a placebo, and merely determined that Xarelto offered an option for treatment of DVT, with obvious increased risk of bleeding events as compared to placebo. (The EINSTEIN Investigators. *Oral Rivaroxaban for Symptomatic Venous Thromboembolism.* N.Engl.J.Med. 2010;363:2499-510). The EINSTEIN-Extension study confirmed that result. (Roumualdi, E., et al. *Oral rivaroxaban after symptomatic venous thromboembolism: the continued treatment study (EINSTEIN-Extension study).* Expert Rev. Cardiovasc. Ther.

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

2011;9(7):841-844). The EINSTEIN-PE study's findings showed that a rivaroxaban regimen was non-inferior to the standard therapy for initial and long-term treatment of PE.  However, the studies also demonstrated an increased risk of adverse events with Xarelto, including those that resulted in permanent discontinuation of Xarelto or prolonged hospitalization. (The EINSTEIN-PE Investigators. *Oral Rivaroxaban for the Treatment of Symptomatic Pulmonary Embolism.* N.Engl.J.Med. 2012;366:1287-97.)

45.     Defendants use the results of the ROCKET AF study, the RECORD studies, and the EINSTEIN studies to promote Xarelto in their promotional materials, including the Xarelto website, which tout the positive results of those studies.  However, Defendants' promotional materials fail to similarly highlight the increased risk of gastrointestinal bleeding and bleeding that required transfusion, among other serious bleeding concerns.

46.     Defendants market Xarelto as a new oral anticoagulant treatment alternative to warfarin (Coumadin), a long-established safe treatment for preventing stroke and systemic embolism. Defendants emphasize the supposed benefits of treatment with Xarelto over warfarin, which they refer to as the Xarelto Difference – namely, that Xarelto does not require periodic monitoring with blood tests and does not limit a patient's diet.

47.     However, in its QuarterWatch publication for the first quarter of the 2012 fiscal year, the Institute for Safe Medication Practices ("ISMP") noted that, even during the approval process, FDA "[r]eviewers also questioned the convenient once-a-day dosing scheme [of Xarelto], saying blood level studies had shown peaks and troughs that could be eliminated by twice-a-day dosing."

48.     Importantly, there is no antidote to Xarelto, unlike warfarin. Therefore, in the event of hemorrhagic complications, there is no available reversal agent. The original U.S. label approved when the drug was first marketed in the U.S. did not contain a warning regarding the

14

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

lack of antidote, but instead only mentioned this important fact in the overdosage section.

49.    Defendants spent significant money in promoting Xarelto, which included at least $11,000,000.00 spent during 2013 alone on advertising in journals targeted at prescribers and consumers in the U.S. In the third quarter of the 2013 fiscal year, Xarelto was the number one pharmaceutical product advertised in professional health journals based on pages and dollars spent.

50.    As a result of Defendants' aggressive marketing efforts, in its first full year of being on the market, Xarelto garnered approximately $582 million in sales globally.

51.    Defendants' website for Xarelto claims that over seven million people worldwide have been prescribed Xarelto.  In the U.S., approximately 1 million Xarelto prescriptions had been written by the end of 2013.

52.    During the Defendants' 2012 fiscal year, Xarelto garnered approximately $658 million in sales worldwide. Then, in 2013, sales for Xarelto increased even further to more than clear the $1 billion threshold commonly referred to as "blockbuster" status in the pharmaceutical industry, ultimately reaching approximately $2 billion for the fiscal year. Thus, Xarelto is now considered the leading anticoagulant on a global scale in terms of sales.

53.    As part of their marketing of Xarelto, Defendants widely disseminated direct-to-consumer advertising campaigns that were designed to influence patients, including Plaintiffs, to make inquiries to their prescribing physician about Xarelto and/or request prescriptions for Xarelto.

54.    In the course of these direct to consumer advertisements, Defendants overstated the efficacy of Xarelto with respect to preventing stroke and systemic embolism, failed to adequately disclose to patients that there is no drug, agent, or means to reverse the anticoagulation effects of Xarelto, and that such irreversibility could have permanently disabling,

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

life-threatening and fatal consequences.

55.     On June 6, 2013, Defendants received an untitled letter from the FDA's Office of Prescription Drug Promotion (hereinafter referred to as the "OPDP") regarding its promotional material for the atrial fibrillation indication, stating that, "the print ad is false or misleading because it minimizes the risks associated with Xarelto and makes a misleading claim" regarding dose adjustments, which was in violation of FDA regulations. The OPDP thus requested that Defendants immediately cease distribution of such promotional material.

56.     Prior to Plaintiffs' prescription of Xarelto, Plaintiffs became aware of the promotional materials described herein.

57.     Prior to Plaintiffs' prescription of Xarelto, Plaintiffs' prescribing physician received promotional materials and information from sales representatives of Defendants that Xarelto was just as effective as warfarin in reducing strokes in patients with non-valvular atrial fibrillation, as well as preventing DVT/PE in patients with prior history of DVT/PE or undergoing hip or knee replacement surgery, and was more convenient, without also adequately informing prescribing physicians that there was no reversal agent that could stop or control bleeding in patients taking Xarelto.

58.     Defendants also failed to warn emergency room doctors, surgeons, and other critical care medical professionals that unlike generally-known measures taken to treat and stabilize bleeding in users of warfarin, there is no effective agent to reverse the anticoagulation effects of Xarelto, and therefore no effective means to treat and stabilize patients who experience uncontrolled bleeding while taking Xarelto.

59.     The Xarelto Medication Guide, prepared and distributed by Defendants and intended for U.S. patients to whom Xarelto has been prescribed, failed to warn and disclose to

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

patients that there is no agent to reverse the anticoagulation effects of Xarelto and that if serious bleeding occurs, it may be irreversible, permanently disabling, and life-threatening.

60.     In the year leading up to June 30, 2012, there were 1,080 Xarelto-associated "Serious Adverse Event" ("SAE") Medwatch reports filed with the FDA, including at least 65 deaths. Of the reported hemorrhage events associated with Xarelto, 8% resulted in death, which was approximately twofold the risk of a hemorrhage-related death with warfarin.

61.     At the close of the 2012 fiscal year, a total of 2,081 new Xarelto-associated SAE reports were filed with the FDA in its first full year on the market, ranking tenth among other pharmaceuticals in direct reports to the FDA. Of those reported events, 151 resulted in death, as compared to only 56 deaths associated with warfarin.

62.     The ISMP referred to these SAE figures as constituting a "strong signal" regarding the safety of Xarelto, defined as "evidence of sufficient weight to justify an alert to the public and the scientific community, and to warrant further investigation."

63.     Of particular note, in the first quarter of 2013, the number of reported serious adverse events associated with Xarelto (680) overtook that of Pradaxa (528), another new oral anticoagulant, which had previously ranked as the number one reported drug in terms of adverse events in 2012.

64.     Moreover, on a global scale, in the first eight months of 2013, German regulators received 968 Xarelto-related averse event reports, including 72 deaths, as compared to a total of 750 reports and 58 deaths in 2012.

65.     Despite the clear signal generated by the SAE data, Defendants failed to either alert the public and the scientific community, or perform further investigation into the safety of Xarelto.

66.     Defendants:

(a)     failed to investigate, research, study and define, fully and adequately, the safety profile of Xarelto;

(b)     failed to provide adequate warnings about the true safety risks associated with the use of Xarelto;

(c)     failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of Xarelto and its effects on the degree of anticoagulation in a patient;

(d)     failed to provide adequate warning that it is difficult or impossible to assess the degree and/or extent of anticoagulation in patients taking Xarelto;

(e)     failed to disclose in the "Warnings" Section that there is no drug, agent or means to reverse the anticoagulation effects of Xarelto;

(f)     failed to advise prescribing physicians, such as the Plaintiffs' physician, to instruct patients that there was no agent to reverse the anticoagulant effects of Xarelto;

(g)     failed to provide adequate instructions on how to intervene and/or stabilize a patient who suffers a bleed while taking Xarelto;

(h)     failed to provide adequate warnings and information related to the increased risks of bleeding events associated with aging patient populations of Xarelto users;

(i)     failed to provide adequate warnings regarding the increased risk of gastrointestinal bleeds in those taking Xarelto, especially, in those patients with a prior history of gastrointestinal issues and/or upset;

(j)     failed to provide adequate warnings regarding the increased risk of suffering a bleeding event, requiring blood transfusions in those taking Xarelto;

(k)     failed to provide adequate warnings regarding the need to assess renal

18

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

functioning prior to starting a patient on Xarelto and to continue testing and

monitoring of renal functioning periodically while the patient is on Xarelto;

(l)      failed to provide adequate warnings regarding the need to assess hepatic

functioning prior to starting a patient on Xarelto and to continue testing and

monitoring of hepatic functioning periodically while the patient is on

Xarelto;

(m)      failed to include a boxed warning about serious bleeding events

associated with Xarelto;

(n)      failed to include a bolded warning about serious bleeding events

associated with Xarelto; and

(o)      in their "Medication Guide" intended for distribution to patients to whom

Xarelto has been prescribed, Defendants failed to disclose to patients that

there is no drug, agent or means to reverse the anticoagulation effects of

Xarelto and that if serious bleeding occurs, such irreversibility could have

permanently disabling, life-threatening or fatal consequences.

67.      At all times relevant, Defendants had a duty to exercise reasonable care in the

researching, manufacturing, selling, merchandising, advertising, promoting, labeling, analyzing,

testing, distributing and marketing of Xarelto for distribution, sale and use by the general public,

including Plaintiffs, and to ensure that Xarelto's use did not result in avoidable injuries.

68.      During the entire time Xarelto has been on the market in the United States, FDA

regulations required Defendants to revise their product labeling "to include a warning about a

clinically significant hazard as soon as there is reasonable evidence of a causal association with

the drug; a causal relationship need not have been definitely established."      21 C.F.R.

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

201.57(c)(6)(i).  This regulation allowed defendants to issue such a warning without prior FDA approval.

69.     During the years since first marketing Xarelto in the U.S., Defendants modified the U.S. labeling and prescribing information for Xarelto, which included additional information regarding the use of Xarelto in patients taking certain medications. Despite being aware of: (1) serious, and sometimes fatal, irreversible bleeding events associated with the use of Xarelto; and (2) 2,081 SAE Medwatch reports filed with the FDA in 2012 alone, including at least 151 deaths, Defendants nonetheless failed to provide adequate disclosures or warnings in their label as detailed above.

70.     Prior to applying for and obtaining approval of Xarelto, Defendants knew or should have known that consumption of Xarelto was associated with and/or would cause the induction of life-threatening bleeding, and Defendants possessed at least one clinical scientific study, which evidence Defendants knew or should have known was a signal that life-threatening bleeding risk needed further testing and studies prior to its introduction to the market.

71.     Upon information and belief, despite life-threatening bleeding findings in a clinical trial and other clinical evidence, Defendants failed to adequately conduct complete and proper testing of Xarelto prior to filing their New Drug Application for Xarelto.

72.     Upon information and belief, from the date Defendants received FDA approval to market Xarelto, Defendants made, distributed, marketed, and sold Xarelto without adequate warning to Plaintiffs' prescribing physicians or Plaintiffs that Xarelto was associated with and/or could cause life-threatening bleeding, presented a risk of life-threatening bleeding in patients who used it, and that Defendants had not adequately conducted complete and proper testing and studies of Xarelto with regard to severe side effects, specifically life-threatening bleeding.

73.     Upon information and belief, Defendants concealed and failed to completely

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

disclose its knowledge that Xarelto was associated with or could cause life-threatening bleeding as well as its knowledge that they had failed to fully test or study said risk.

74.    Upon information and belief, Defendants ignored the association between the use of Xarelto and the risk of developing life-threatening bleeding.

75.    Defendants' failure to disclose information that they possessed regarding the failure to adequately test and study Xarelto for life-threatening bleeding risk further rendered warnings for this medication inadequate.

76.    When warning of safety and risks of Xarelto, Defendants negligently and/or fraudulently represented to the medical and healthcare community, the Food and Drug Administration (hereinafter referred to as the "FDA"), to Plaintiffs and the public in general, that Xarelto had been tested and was found to be safe and/or effective for its indicated use.

77.    Defendants concealed their knowledge of Xarelto's defects from Plaintiffs, the FDA, the public in general, and/or the medical community specifically.

78.    These representations were made by Defendants with the intent of defrauding and deceiving Plaintiffs, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense and/or purchase Xarelto for use to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, all of which evinced a callous, reckless, willful, depraved indifference to health, safety and welfare of the Plaintiffs herein.

79.    Defendants negligently and improperly failed to perform sufficient tests, if any, on humans using Xarelto during clinical trials, forcing Plaintiffs, and Plaintiffs' physicians, hospitals, and/or the FDA, to rely on safety information that applies to other non-valvular atrial

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

fibrillation treatment and DVT/PE treatment and prophylaxis, which does not entirely and/or necessarily apply to Xarelto whatsoever.

80.     As a result of the foregoing acts and omissions, the Plaintiffs was and still is

caused to suffer serious and dangerous side effects including, *inter alia,* life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings. Plaintiffs herein has sustained certain of the above health consequences due to Plaintiffs' use of Xarelto.

81.     Defendants concealed their knowledge of the defects in their products from the

Plaintiffs, and Plaintiffs' physicians, hospitals, pharmacists, the FDA, and the public in general.

82.     The foregoing allegations, those that follow, and those facts to be proven at trial

establish that defendants acted affirmatively, through active and intentional fraudulent omission, concealment, and suppression of the safety dangers associated with their drug, Xarelto, to conceal from Plaintiffs the existence of his cause of action, and such concealment by defendants in fact lulled, induced, or otherwise prevented Plaintiffs from discovering the existence of his various causes of action.

83.     Defendants are estopped from asserting any statute of limitations defense because

they fraudulently concealed from Plaintiffs and the medical community the nature of Plaintiffs' injuries and their connection with Xarelto.

## COUNT I
## STRICT PRODUCT LIABILITY

84.     Plaintiffs incorporate by this reference the allegations set forth in the paragraphs

above as if fully set forth herein.

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

85.     The Xarelto manufactured and/or supplied by Defendants was unaccompanied by proper warnings regarding all possible adverse side-effects and the comparative severity and duration of such adverse effects;  the warnings given did not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects. Defendants failed to perform adequate testing in that adequate testing would have shown that Xarelto possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.  Had the testing been adequately performed, the product would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the drug.

86.     The Xarelto manufactured and/or distributed and/or supplied by Defendants was defective due to inadequate post-marketing warning or instruction because Defendants failed to provide adequate warnings to users or consumers of Xarelto and continued to aggressively promote Xarelto.

87.     As the proximate cause and legal result of the defective condition of Xarelto as manufactured and/or supplied and/or distributed by Defendant, and as a direct and legal result of the conduct of Defendants described herein, Plaintiffs has been damaged.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorneys fees, and for such other and further relief as this Court deems just and proper.

**COUNT II**
**STRICT PRODUCT LIABILITY**
**(Pursuant to Restatement Second of Torts 402a (1965))**

88.     Plaintiffs incorporate by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

89.     The Xarelto manufactured and/or distributed and/or supplied by Defendants was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design and formulation of the drug.

90.     Alternatively, the Xarelto manufactured and/or distributed and/or supplied by Defendants was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than alternative drugs available for the treatment of Plaintiffs' condition.

91.     There existed, at all times material hereto, safer alternative medications.

92.     Defendants did not perform adequate testing upon Xarelto. Adequate testing would have revealed that Xarelto causes serious adverse effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.

93.     The Xarelto manufactured, designed, marketed, distributed and/or sold by Defendants was unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of Xarelto, and the severity and duration of such adverse effects; the warnings given did not accurately reflect the symptoms, scope or severity of adverse effects and did not accurately relate the lack of efficacy.

94.     Defendants did not warn the FDA of material facts regarding the safety and efficacy of Xarelto, which facts Defendants knew or should have known.

95.     The Xarelto manufactured and/or distributed and/or supplied by Defendants was defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risk of injury from Xarelto, it failed to provide adequate warnings to users or consumers of Xarelto and continued to promote Xarelto.

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

96.     As a result of the defective condition of Xarelto, Plaintiffs has suffered damage and injury.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorneys fees, and for such other and further relief as this Court deems just and proper.

**COUNT III**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

97.     Plaintiffs incorporate by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

98.     The acts, omissions, and representations of Defendants regarding the manufacturing, distribution and marketing of Xarelto as described in the foregoing paragraphs were intentional, reckless, extreme and outrageous.  Defendants intentionally engaged in extreme and outrageous conduct when it intentionally and/or recklessly marketed Xarelto and then intentionally and/or recklessly concealed material information about Xarelto's potential serious adverse effects from Plaintiffs and his physicians, hospitals, and medical providers.

99.     Defendants knew that Plaintiffs would suffer mental distress and anxiety upon learning that Xarelto possessed a likelihood of serious adverse effects and complications such as life-threatening bleeds.

100.    As a result of defendant's misconduct, Plaintiffs sustained and will continue to sustain emotional and mental distress and anxiety.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorneys fees, and for such other and further relief as this Court deems just and proper.

**COUNT IV**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

101.    Plaintiffs incorporate by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

102.    Defendants negligently and carelessly manufactured, sold, and distributed Xarelto to Plaintiffs which was defective.

103.    Defendants negligently and carelessly concealed the defective nature of Xarelto from Plaintiffs, his physicians, hospitals, and medical providers.

104.    Defendants negligently and carelessly misrepresented the usefulness, quality and safety of Xarelto to Plaintiffs, his physicians, hospitals, and medical providers.

105.    Defendant's negligence and carelessness directly impacted the Plaintiffs in that he was induced to purchase and ingest the defective and dangerous Xarelto.

106.    As a direct result of defendant's misconduct alleged herein, Plaintiffs has suffered and will continue to suffer emotional and mental distress and anxiety from the fear of knowing there is a likelihood of serious adverse effects and complications of Xarelto use such as life-threatening bleeds.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorneys fees, and for such other and further relief as this Court deems just and proper.

## COUNT V
## COMMON LAW FRAUD

107.    Plaintiffs incorporate by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

108.    Defendants made material representations that were false and that were either known to be false when made or were asserted without knowledge of their truth.  Defendants had

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

in its possession adverse drug event reports, drug studies, and other documentation about Xarelto and yet made the following misrepresentations:

    a.    Misrepresentations regarding the frequency of Xarelto-related adverse event reports or occurrences in the Xarelto label, package insert or PDR label;

    b.    Misrepresentations as to the existence, occurrence and frequency of occurrences, severity and extent of the overall risks of Xarelto;

    c.    Misrepresentations as to the efficacy of Xarelto;

    d.    Misrepresentations as to the number of adverse events and deaths reported with the use of Xarelto;

    e.    Misrepresentations regarding the nature, seriousness, and severity of adverse events reported with the use of Xarelto.

109.    Defendants intended that these misrepresentations be relied upon by physicians, including Plaintiffs' physicians, healthcare providers and consumers. Plaintiffs did rely upon the misrepresentations that caused his injuries.

110.    Defendant's misrepresentations were the proximate and/or producing cause of Plaintiffs' injuries.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorneys fees, and for such other and further relief as this Court deems just and proper.

## COUNT VI
## NEGLIGENCE

111.    Plaintiffs incorporate by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

112.    Defendants owed Plaintiffs legal duties in connection with its development, manufacture, and distribution of Xarelto.  Defendants breached those duties, proximately causing Plaintiffs' injuries.  Specifically, Defendants failed to meet its duty to use reasonable care in the testing, creating, designing, manufacturing, labeling, packaging, marketing, selling, and warning of Xarelto.  Defendants are liable for acts and/or omissions amounting to negligence, gross negligence and/or malice including, but not limited to the following:

      a.    Failure to adequately warn Plaintiffs and Plaintiffs' physicians of the known or reasonably foreseeable danger that Plaintiffs would suffer a serious injury or death by ingesting Xarelto;

      b.    Failure to adequately warn Plaintiffs and Plaintiffs' physicians of the known or reasonably foreseeable danger that Plaintiffs would suffer a serious injury or death by ingesting Xarelto in unsafe doses;

      c.    Failure to use reasonable care in testing and inspecting Xarelto so as to ascertain whether or not it was safe for the purpose for which it was designed, manufactured and sold;

      d.    Failure to use reasonable care in implementing and/or utilizing a reasonably safe design in the manufacture of Xarelto;

      e.    Failure to use reasonable care in the process of manufacturing Xarelto in a reasonably safe condition for the use for which it was intended;

      f.    Failure to use reasonable care in the manner and method of warning Plaintiffs and Plaintiffs' physicians as to the danger and risks of using Xarelto in unsafe doses; and

      g.    Such further acts and/or omissions that may be proven at trial.

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

113.    The above-described acts and/or omissions of Defendants were a direct and proximate cause of the severe, permanent and disabling injuries and resulting damages to Plaintiffs.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorneys fees, and for such other and further relief as this Court deems just and proper.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

114.    Plaintiffs incorporate by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

115.    Defendants failed to communicate to Plaintiffs and/or the general public that the ingestion of Xarelto could cause serious injuries after it became aware of such risks.  Instead, Defendants represented in its marketing that Xarelto was safe and effective.

116.    Plaintiffs brings this cause of action against Defendants under the theory of negligent misrepresentation for the following reasons:

a.    Defendant, individually, and through its agents, representatives, distributors and/or employees, negligently misrepresented material facts about Xarelto in that it made such misrepresentations when it knew or reasonably should have known of the falsity of such misrepresentations.  Alternatively, Defendants made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

b.    The above misrepresentations were made to Plaintiffs as well as the general public;

c.    Plaintiffs and his healthcare providers justifiably relied on defendant's misrepresentations; and

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

      d.      Consequently, Plaintiffs ingested Xarelto to Plaintiffs' detriment. Defendant's negligent misrepresentations proximately caused Plaintiffs' injuries and monetary losses.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorneys fees, and for such other and further relief as this Court deems just and proper.

**COUNT VIII**
**FRAUDULENT MISREPRESENTATION**

117.    Plaintiffs incorporate by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

118.    Defendants are engaged in the business of selling Xarelto. By its advertising, labels, or otherwise, Defendants has made to Plaintiffs and the public a misrepresentation of a material fact concerning the character or quality of Xarelto.

119.    Plaintiffs justifiably relied on defendant's misrepresentations in purchasing Xarelto. Plaintiffs has suffered physical harm proximately caused by defendant's misrepresentations regarding the character or quality of Xarelto.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorneys fees, and for such other and further relief as this Court deems just and proper.

**COUNT IX**
**EXPRESS WARRANTY**

120.    Plaintiffs incorporate by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

121.     Defendants are merchants and/or sellers of Xarelto.  Defendants sold Xarelto to consumers, including Plaintiffs, for the ordinary purpose for which such drugs are used by consumers.  Defendants made representations to Plaintiffs about the quality or characteristics of Xarelto by affirmation of fact, promise and/or description.  The representations by Defendants became part of the basis of the bargain between Defendants and Plaintiffs.  Xarelto did not comport with the representations made by Defendants in that it was not safe for the use for which it was marketed.  This breach of duty by Defendants was a proximate cause of the injuries and monetary loss suffered by Plaintiffs.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorneys fees, and for such other and further relief as this Court deems just and proper.

## COUNT X
## IMPLIED WARRANTY

122.     Plaintiffs incorporate by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

### WARRANTY OF MERCHANTABILITY

123.     Defendants are a merchant and/or seller of Xarelto.  Plaintiffs purchased Xarelto from Defendants and used Xarelto for the ordinary purpose for which it is used by consumers.  At the time it was purchased by Plaintiffs, Xarelto was not fit for the ordinary purpose for which such drugs are used.  Xarelto was not fit for the ordinary purpose for which such drugs are used because it was not manufactured, designed or marketed in a manner to accomplish its purpose safely.  Defendant's breach of its implied warranty of merchantability caused Plaintiffs' injuries and monetary losses.

### WARRANTY OF FITNESS

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

124.    Defendants sold Xarelto to Plaintiffs with the knowledge that Plaintiffs was purchasing Xarelto for a particular purpose.  Further, Defendants knew, or should have known, that Plaintiffs was relying on defendant's skill or judgment to select goods fit for Plaintiffs' purpose.

125.    Defendants delivered goods that were unfit for Plaintiffs' particular purpose and thus breached its implied warranty of fitness.  Defendant's failure to select and sell a product which was reasonably safe for its intended use proximately caused Plaintiffs' injuries and monetary losses.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorneys fees, and for such other and further relief as this Court deems just and proper.

## COUNT XI
## WRONGFUL DEATH

126.    Plaintiffs incorporate by this reference the allegations set forth in the paragraphs above as if fully set forth herein, and further allege:

127.    Plaintiffs bring this claim under the wrongful death act, where appropriate, on behalf of and for the benefit of the plaintiff decedents' lawful beneficiaries.

128.    That as a direct and proximate result of one or more of the aforesaid acts or omissions of the Defendants  complained of here and above, Plaintiffs' Decedents were caused to suffer great physical and mental anguish, became liable for large sums of monies for hospital, medical and other health care services, and ultimately suffered death; and decedents' heirs were caused to experience great grief, sorrow, and mental suffering, and by reason of the decedents' deaths, have been caused to incur substantial funeral and burial expenses, and have

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

been deprived of Decedents' means of support and have lost Decedents' companionship and society.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorneys fees, and for such other and further relief as this Court deems just and proper.

## COUNT XII
## SURVIVAL ACTION

129.    Plaintiffs incorporate by this reference the allegations set forth in the paragraphs above as if fully set forth herein, and further allege:

130.    In the alternative, plaintiffs bring survival actions, where appropriate, for injuries and damages plaintiff decedents' could lawfully have recovered had they not died.

131.    That as a direct and proximate result of one or more of the aforesaid acts or omissions of the Defendants complained of here and above, Plaintiffs' Decedents, prior to their death, suffered severe injuries, suffered severe pain, both mental and physical, incurred substantial medical bills, lost income, were prevented from attending to Decedents' normal affairs, and impairment of the enjoyment of life, until the date of his or her death.

**WHEREFORE,** Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

Electronically Filed - City of St. Louis - June 20, 2016 - 02:49 PM

1.      Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

2.      Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants, whose actions and omissions were outrageous because of defendants' evil motives and reckless indifference to the rights of others and showed complete indifference to or a conscious disregard for the safety of others, in an amount sufficient to punish Defendants and deter future similar conduct;

3.      Awarding Plaintiffs' attorney's fees;

4.      Awarding Plaintiffs the costs of these proceedings; and

5.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

6.      Plaintiffs hereby demand trial by jury as to all issues.

Respectfully submitted,
THE DRISCOLL FIRM, P.C.

BY:      /s/ John J. Driscoll
JOHN J. DRISCOLL (54729)
CHRISTOPHER J. QUINN (41883)
ANDREW D. KINGHORN (66006)
211 North Broadway, Suite 4050
St. Louis, Missouri 63012
Telephone No. (314) 932-3232
Fax No. (314) 932-3233